If you reserved any rebuttal time, please let me know when you approach the podium. Good morning. I'd like to reserve three minutes. You may. Please proceed. May it please the Court, my name is Daniel Olivas and I represent Applied Underwriters Captive Risk Assurance Company. In the papers, Your Honor, we refer to it as ACRA. At bottom, this case is about Milan's efforts to avoid paying what it owes under a contract, the reinsurance participation agreement. But the part of the case that's in front of this Court relates to Milan's efforts to avoid arbitration under the contract. The contract has an arbitration clause that says the parties will agree to arbitrate any and all disputes. It says that the parties will submit to the American Arbitration Association rules, the AAA rules. And it also says that the parties will arbitrate in the British Virgin Islands or any place else that the parties agree to. Our papers have a detailed background of how we got here and leading up to ACRA's arbitration demands, so I won't pick up there. But what I would like to pick up with is that once the demand for arbitration was made, Milan asked for and received a benefit under the arbitration clause. It asked ACRA to delay arbitration and to mediate, which is the first step in the two-step process set out in the arbitration provision. ACRA consented. The parties mediated in Chicago. It was unsuccessful. And then 12 days later, Milan files suit in the Western District of Tennessee, a court it knew would not have jurisdiction to compel it to arbitrate. Milan then filed a motion to stop arbitration, and ACRA filed a motion to compel and a motion to transfer under the RPA's forum selection clause. And the district court granted Milan's motion and denied both of ACRA's. Now, ACRA has appealed on several grounds, but the court need only reach one of them, and that's the first of four points I'd like to make. The arbitration provision has a delegation clause that the district court failed to recognize. The arbitration clause or the arbitration agreement incorporates the AAA rules, and the AAA rules contain the delegation language. And the rules give the arbitrator the power to decide his or her own jurisdiction, including to consider questions of the validity of the arbitration agreement. Now, the Sixth Circuit hasn't addressed that, but the majority of courts, and I want to say that's about six circuits, considering what effect to give to the incorporation of the AAA rules, hold that incorporation of those rules clearly and unmistakably manifests an intent to arbitrate arbitrability. And that's the standard, and that's what the FAA does.  Milan's one defense to arbitration is that the arbitration agreement is invalid. But that's a question for the arbitrator because of the delegation clause. Milan never mentioned the delegation clause and its challenge. It challenged only the arbitration agreement. And under prevailing law, challenging the arbitration agreement itself is simply not enough. And that's because the delegation clause is severable. And so the FAA applies to delegation clauses like it would any other contract, and the courts have to enforce them if they're not specifically challenged. Now, in 2010, the Supreme Court set all this out and ran a center, which holds that unless Milan specifically challenged the delegation provision, which it didn't, the court has to treat it as valid and enforce it. And that's what ACRA's asking the court to do, give effect to the party's intentions and turn questions of arbitrability over to the arbitrator. Now, this brings me to the second point I'd like to make. This regards the motion to compel. Under the FAA, the district court only can compel arbitration within its district, and there was no arbitration set in the Western District of Tennessee. Now, Milan disputes that the parties agreed to arbitrate in Chicago. So the district court ruled that it had no authority to compel arbitration, even if it agreed with ACRA's arguments elsewhere. And for that reason, it denied the motion to compel as a standalone ground. It wasn't the only ground, but it was a standalone ground. Now, instead of denying, our papers show that the district court had three options. It could have stayed the case, it could have dismissed the case, or it could have transferred the case. If this court reverses the district court on the delegation clause argument, the district court, again, will face the FAA's venue geographic limitation. And so what ACRA is asking this court to do is to remand the case and order the district court to enforce the delegation agreement, and ACRA will agree to arbitrate in the Western District of Tennessee or any place else that Milan would like to go. This gives effect to the arbitration provision agreement that lets the parties choose where they'll arbitrate. Now, why do we need to give instructions to the district court as to what to do if we remand it? Well, I think that if there's a remand, there's no – arbitration isn't set anywhere. So the – I thought the arbitration was in Virgin Islands. No, Your Honor. That's one of the places identified in the forum selection clause of the arbitration agreement. But there's also any place else the parties agree to. And so our formulation is send this back to the district court to enforce the delegation provision. We will give effect to the language that says wherever the parties agree. Okay, but the other side has to agree with that. That's right, Your Honor. Because that's Tennessee, isn't it, in the arbitration? No, no, it's not. But ACRA will agree to arbitrate anywhere that Milan wants to arbitrate. And so – Okay, well, how about – I mean, the issue they're saying that – I guess the arbitration agreement says that Nebraska law applies. No, no, Your Honor. The underlying contract says that. The arbitration agreement doesn't have to. Okay, the underlying contract. So is the – you had the motion to transfer venue so that arbitration can be compelled. Well, we had a motion to compel and we had a motion to transfer venue. And the transfer was in the alternative. So if we ended up in a district court, it should be in Nebraska. Okay, but don't we have to – to give you relief, don't we also have to reverse the denial of your motion to transfer venue to Nebraska so that Nebraska district court can compel arbitration where it should be? Well, that's our fourth – that's the fourth point I would make, that we would like – Okay, I'm trying to figure out what relief you want here. Yeah, I think our primary relief is we want the delegation provision enforced like it should. Then the question – That's just part of the problem there, okay? I'm sorry, I don't mean to – Yeah, that's just part of the case. That's right. Once – if the court agrees with us on that, then it becomes a matter of enforcement. And we think that the district court in western Tennessee could enforce it if – I guess they could by consent of the parties, but you're assuming the other side would consent to that, which I don't think they would. Well, I think if the court – if this court ordered the district court to enforce – let's say a district court to enforce the delegation provision, I don't think Milam would have a choice about arbitrating it. The only question then would be where to arbitrate, and we will agree to any place they want to. So if they want to go to Chicago, then the western district, under your order, would be able to transfer this to Chicago or dismiss so that we could refile in Chicago to compel. But that's the purpose of my original question. Because this all involves some sort of dialogue that either does or doesn't lead to an agreement between the parties, why would we get into that? Normally we would tell the district court what to do if we thought the district court didn't understand or was unable or unwilling to comport with the law, but we don't have any reason to believe that here. He just, in your opinion, went awry at the first step. That's correct. So we correct the first step and let the district court worry about it after that. What's the matter with that? We'd be happy with that, Your Honor. The part of the argument that I filled in for you was, I suppose, anticipating how this court would view the FAA's geographic limitations, which would still stand. So maybe I put the cart before the horse there. But enforcing the delegation provision is the first step. After that, the arbitration agreement would come into effect, and the parties would then be compelled to arbitrate, or at least the arbitration agreement would be held enforceable. And so a district court could then compel, and we would agree to go to any place that Milan wanted to go. The district court didn't make a decision on the merits of the transfer of venue, did it? It simply denied it because it had held that arbitration wasn't enforceable. So if we reverse that, we don't know what the district court is going to do in connection with your motion. It will be back before the district court, won't it? It would be back before the district court. The district court denied our motion to transfer, not on the merits of the arbitration clause argument, though. It did so on applying 1404A, the traditional analysis that was changed subsequently by Atlantic Marine. You have appealed the denial of the motion to transfer, have you not? That's correct, Your Honor. So that order is subject to this appeal before us? That's right. Okay, so normally we do address all orders that are being challenged on appeal, unless it's moved by something else. Okay, interesting. Let me cut through all these procedural machinations. Is there any question that the arbitration provision is just unenforceable on its face under Nebraska law, which the parties agreed to? You may have an argument that Milan has waived it, but you agree that by the express terms of a Nebraska statute, this arbitration agreement is unenforceable? No. I think we dispute the analysis that Milan offered that the district court accepted. I think we say that's wrong. Now, we didn't specifically appeal that, but we don't concede that. Do you also agree, I mean, if the parties don't agree on a location, doesn't the district court have to just send the parties to the Virgin Islands? Because that's the one place that's set out in the agreement. So the parties are stuck, and by default, that's sort of the default place. Stuck to go to the Virgin Islands. Right. It could be worse. It could be worse, but by default, the parties have clearly agreed to arbitrate in the Virgin Islands because it's specified in the contract. So in the absence of agreement, would you agree that the district court simply has to send the parties off to the Virgin Islands? Well, I think the district court has an alternative there. It can do what we've suggested, take the parties' agreement to arbitrate elsewhere. And look, there was an agreement. Milan disputes this, but our position is there was an agreement to arbitrate in Chicago. So we either arbitrate there or the Western District of Tennessee, which probably is best for Milan. But the district court can enforce that. Now I have seven minutes, Your Honor. Is the district court really even required to send it someplace, or is it simply at that point dismissing their appeal, and then you have to refile someplace else where you think the arbitration should occur to compel arbitration? That's probably a likely scenario. Isn't that the way it works? That would be likely. Yes, Your Honor. My time is up. Thank you. Here you filed a motion to compel arbitration. I mean, we've got several things going on here. We've got their motion to stay arbitration. You responded by a motion to compel arbitration and also a motion to transfer the case to Nebraska District Court, right? Yes, Your Honor. But under no circumstances can this district court compel arbitration because wherever it occurs, it's at a different place, unless the parties have reached agreement, which they have not. Am I right about that? That would be right, Your Honor. My time is up. Is there a question you wanted me to answer, Judge Griffin? I didn't. No. Procedurally, it's a little bit complicated. That's all. Okay. You'll have your time. Good morning, Your Honors. May it please the Court. My name is Scott Carey. I'm the attorney for the Pelee-Milan Express Company. It's a small family-owned trucking company that's based in West Tennessee. And I'll address Judge Griffin's comment about the British Virgin Islands. Everyone I've told this case about acts like, why would you not want to go to the British Virgin Islands? I've heard it's a very nice place to go. And in a general sense, I will say that I think arbitration is a good thing. That's not our contention here. Certainly the FAA says that there's a presumption that arbitration is good. The Nebraska state statute and a number of other legislatures throughout the United States, though, have looked at arbitration clauses in this particular type of setting where you've got a consumer of insurance, like my trucking company, who's buying workers' compensation insurance and saying, as a consumer, in the insurance context, we don't want insurance companies to essentially be able to use an arbitration clause as a weapon. And I respectfully submit that that's what Applied Underwriters is doing in this case by requiring two things. One, a very inconvenient location for my client, and two, basically stacking a deck of who gets to decide this dispute. That's the whole issue here, whether a federal judge in Tennessee decides whether Nebraska law allows arbitration of this dispute or whether the arbitrators chosen by the parties are the ones to decide whether Nebraska law bars this dispute. And their argument is that this arbitration agreement is very, very broad and thereby delegates to the arbitrators the power to decide whether state law would bar going to arbitration. We take issue with that, and I think Judge Polster kind of went right to the heart of the matter. Whether the district court looks at the arbitration clause or the arbitrator ultimately looks at the arbitration clause, the bottom line is, under Nebraska law, and we all agree that Nebraska law applies, there's no question that the Nebraska statute invalidates the arbitration clause. Obviously, they think there is. I asked them that, and they said we dispute that. You want to skip some steps here as I see it, so let me focus on that and then get your response. There may be a number of reasons why this arbitration clause itself is invalid, but you didn't challenge that. It could have been invalid because it's against public policy, because it's somehow coercive and unfair form or whatever it is. You didn't make any of the challenges that you need to make in order to forestall having the arbitrator determine the question of arbitrability. I respectfully disagree, Your Honor. Where do we find that you challenge the arbitration clause itself? In both our response to the motion to compel and our motion to enjoin. You've said it's invalid, the clause itself is invalid? Yes, the entire arbitration clause is invalid under Nebraska state law. That's the basis of our argument. The delegation of disputes over jurisdiction, et cetera. I guess I would say two things to that, Your Honor. First of all, unlike Renner Center, and this is a huge distinction in our case, there is no specific delegation clause in that arbitration clause. If you look at the Renner Center case, there was a standalone, a separate arbitration agreement. This is an employment contract, and there's no Nebraska state statute in that context which says you can't arbitrate to begin with. In that particular situation, the employee that was trying to not go to arbitration stated that the overall contract was unconscionable. Here, our argument from day one has been that this arbitration provision is invalid under Nebraska law. In our case... But what Judge Polster is pointing out to you is the arbitration provision itself is a separate issue than the delegation clause within the arbitration agreement. Two points on that. This case, in that respect, seems to be controlled by Renner Center, from my perspective. I appreciate that, Your Honor, but there's a huge distinction in the clause itself. First of all, we said that there is no specific delegation clause within our arbitration clause. The reason is, when you take a look at what it says in our arbitration clause, it says the arbitrator has the ability to determine the enforceability of this agreement. In that context, this agreement means the overall reinsurance participation agreement, not the specific arbitration clause. That's very different. You're skipping some phrases here. It says right in here, any disputes arising under this agreement, any dispute or controversy, all disputes, exclusively are resolved by binding arbitrations. How could you be any more specific than that language, whether you used a specific delegation clause or not? I think if you look at the Renner Center case, it actually helps us, because in that case it says, a party challenging the validity of a precise agreement to arbitrate at issue. The federal court must consider the challenge before ordering compliance with that agreement. The Supreme Court itself has stated that the question before us then is whether the delegation provision is valid. The delegation provision, according to the Supreme Court, is an agreement in and of itself to arbitrate. It's all one and the same. It would not make sense for the Nebraska legislature to say, in this context you cannot have an agreement to arbitrate, but somehow you get around that and you still have to go to the BVI to have an arbitrator look at this issue on whether or not an arbitration clause is valid. We're not skipping any steps. A delegation provision, and first of all we say that there is no specific delegation provision here, but if the court finds that there is, then under the renaissance language, the district court is still supposed to make that gateway decision on whether or not the entire provision, including any delegation provision, is valid. I hear your words, but I don't know how the parties, and you signed this agreement, and there's been no allegation of fraud, duress, coercion, which would be a threshold question. If you were saying you were coerced into signing this, that would be a district court decision. How can you say it more clear? All disputes between the parties relating in any way to the execution, delivery, construction, or enforceability of this agreement. Because that in and of itself, Your Honor, respectfully, is invalid under Nebraska law. It may be. But the parties, you and Applied, agreed to have an arbitrator decide that. Arbitrators can decide questions of law. You agree with that, don't you? Absolutely. But it's an illegal contract. That provision, whether it's a delegation provision or the arbitration provision, the Supreme Court has specifically said, that Applying Renaissance Center, that purported delegation provision is an agreement itself to arbitrate. And under Nebraska law, that entire provision from the beginning is invalid. That may be. We've argued that from the beginning. But isn't it for an arbitrator to decide how to apply Nebraska law? And I think you had a sub-argument that they may have waived this. Isn't that for the arbitrator to decide? On the waiver issue, we did not waive it. It was actually their argument to raise. They didn't raise it at the magistrate level. They only raised it for the first time during the objections. And it was something that we then responded to. And also there was some comment about Chicago. You're saying essentially as a matter of law, as a matter of Nebraska law, the parties can't agree to have an arbitrator decide the question of the enforceability of the agreement? True, because under Renaissance Center, because the United States Supreme Court has said that. The United States Supreme Court says that a delegation provision is in and of itself an agreement to arbitrate and also has stated that it's the court's decision to determine on the front end whether or not that provision is valid. And the court has already decided that under Nebraska law, that is invalid. And there's no way, frankly, that you can read that statute in Nebraska any other way. Any agreement concerning or relating to an insurance policy other than a contract between insurance companies, including insurance, including reinsurance, are invalid. And from a public policy standpoint, Your Honors, it would not make sense to require Mylan to go to BVI to have an arbitrator look at this when it's very clear that from the beginning the entire thing is invalid. The other cases, frankly, that applied underwriters have cited do go to those situations where there is an agreement between two parties, and one party is trying to not go to arbitration because of underlying facts of how the contract was entered into that was unconscionable. Here, it's just an illegal contract. And the Nebraska State Legislature and a number of other legislatures have said, in this context, you can't use arbitration as a weapon to make them go someplace else. And it seems like it would be, frankly, unfair and against public policy. The other part of that is, they're not really sure where they want to go, frankly. Whether it's BVI, whether it's Nebraska or Chicago, they're all over the place on where they want to go. I think clearly the court was right that even though they didn't raise the issue about the motion to compel, because they argued the motion to compel in the Western District, now they've shifted their argument and said the district court didn't have authority to make that decision. Be that as it may, it was their motion, and they should have gone to BVI in order to make that motion. And I think the district court properly decided that it was going to deny the motion to compel. They should have gone to the BVI? I thought just the arbitration hearing would be held in BVI. Why would they go to the BVI otherwise if they're not having an arbitration hearing? Because I think it's clear under the venue statute, or the venue section, rather, of the FAA, Section 4, is specific about where you can file motions to compel. And this circuit and other circuits have said, and it's the majority view, that if you want to compel arbitration someplace, as applied as wanted to do, then you have to go to the jurisdiction where the arbitration would take place. Okay, so the transfer on the motion to compel would be a transfer to the British Virgin Islands? Well, they haven't asked for that, Your Honor. What they've asked for, somewhat perplexing, is to transfer the case to Nebraska. But under their own argument, if this court transfers the case to Nebraska, the Nebraska case law, according to them, or the Nebraska state court, according to them, wouldn't have the ability to compel arbitration either because it's not the jurisdiction where this was supposed to be brought. The bottom line is, Your Honor, that these are all procedural issues. We would like to get to the crux of the matter, which is we paid $8 million in premiums on $5.2 million worth of losses, and they want an additional $3.5 to $4.9 million from my company. We want to get to the bottom of that. All these procedural mechanisms, at the end of the day, again, it's kind of a stall tactic. Well, the easiest way to get the merits is to go through arbitration. Again, Your Honor, we would, except for BVI is inconvenient. And even if we agreed to someplace else... Why did you put it in the agreement, then? Commonly, insurance agreements like this are seen as, frankly, agreements of cohesion. And that's, again, I think, they don't want to have this arbitrated. The other part of that is they've also stacked the deck on who gets to arbitrate it. It's a group of industry professionals who are seated as the arbitrators rather than a jury of our peers. And I think, clearly, the only thing that was properly before the district court was our motion to stop. That, I think we agree, could have been raised in the district court, that this was a contract of adhesion, that essentially there was coercion. That could have been raised, but you've never made that argument, have you? Frankly, Your Honor, we didn't have to because you look at the plain language of the law that they chose... I know, but they dispute the plain language, so they haven't conceded that. Well, they've shifted their argument. They've lost twice at the lower court level, and they haven't appealed that here, so frankly, that's not before, Your Honor. They haven't conceded it, but they have completely shifted their agreement or their argument here because, frankly, they understood that that was a loser. In the lower court... What haven't they appealed? I'm sorry? What haven't they appealed? They haven't appealed that the Nebraska state statute invalidates the arbitration clause. The underlying argument has been that this is somehow reinsurance, and therefore it falls in the exclusion. Why would they have to appeal a decision that the district judge made if the district judge, in fact, didn't have the authority to make that decision because it was a question first properly presented to the arbitrator? Frankly, Your Honor, they should have made that argument before the district court. They shouldn't have asked the district court to dismiss the case because the district court didn't have authority to do that. They didn't do that. Instead, they argued that the Nebraska statute doesn't apply because it's somehow reinsurance. They slapped the name reinsurance on this agreement between my client and the insurance company and tried to say that that's why the very clear Nebraska statute doesn't apply. I don't understand when you say they didn't do that. Why didn't they do what we're talking about, now that we're making this an impenetrable sentence? Why didn't they do what we're talking about here by virtue of filing their motion to compel the arbitrator to be the one that makes the decision on arbitrability? If they're right about that, whatever the district court said is irrelevant, isn't it? They didn't do that. Their whole argument, and that's a question for counsel, but their whole argument has been basically that the statute doesn't apply, and that... No, no, it's not. I mean, read the brief. No, no, in the underlying... That the arbitrator can decide whether Nebraska law bars this or not rather than the court. That's their argument. I know, but they didn't do that at the lower court, Your Honor. Their whole argument was that the Nebraska state statute doesn't apply. They lost their... I'm not saying they didn't preserve the argument. Well, they've shifted their argument now. They made their motion. They made the motion before the district court. That doesn't pop up here at the Court of Appeals. The motion was to say that the case should be dismissed because arbitrability is for the arbitrator, right? They said that. That was for the first time in the objections. That was not the crux... Oh, okay, fine. But it was before the district court, right? In their objections. So what the district court then said about Nebraska law, isn't that irrelevant if, in fact, the decision is first properly made by the arbitrator? No, because, again, you go back to Renner Center... So somehow the district court's decision on something that the district court shouldn't have been decided then becomes binding upon the arbitrator? No, Your Honor, because... How can that be? Because, again, you go back, and I think Renner Center and the language is important in Renner Center, where it says, if the party challenges the validity of the precise agreement to arbitrate an issue, the federal court... the federal court must consider the challenge before ordering compliance with that agreement. And in this case, that's exactly what happened. The federal court made that threshold decision and looked at the entire agreement, including the delegation clause and including the arbitration clause. And based on that, made the decision correctly. I mean, the Supreme Court said, the question before us is whether the delegation provision is valid. And you can't delegate that... If the entire provision is invalid, you can't delegate that to the arbitrator. That would be essentially getting around Nebraska law by saying, oh, there's this delegation clause, so even though an arbitration provision is illegal in this contract, you can't use that as a weapon, we're still going to make you go arbitrate. And in this case, frankly, it leads to an absurd situation because the arbitrator is going to look at the clear statute and we're going to be right back to where we are in the state of Tennessee, Your Honor. I think we understand. Thank you. Thank you very much, Your Honor. Three minutes. They're missing... The thing about the missing steps that I think Judge Polster was talking about is Renner Center talks about the severability of the delegation clause. Milan has a... Milan's not talking about that. They didn't talk about it in their papers. The Court's right. It doesn't matter if the underlying arbitration... And I'm not conceding that, but let's say it is. It's invalid. If there's a delegation clause that's not challenged, that's severed out of that, and it's not... It's a stand-alone contract. That's not... It has none of the defects of the underlying contract. That's what Renner Center stands for. They don't get there at all because they didn't challenge it, and Renner Center talks about that. If you don't challenge the delegation clause specifically, you can't raise it in front of this Court. You can't raise it anywhere, and they didn't do that. Part of their argument is that there isn't a specific delegation clause in this agreement, right? Well, that's their argument. That's correct. So we're reading the language. We repeated the language, several of us did, to your opposing counsel about all disputes and any disputes, so on and so forth. But is there a meaningful distinction, then, between the manner in which this contract seemingly is broad with respect to who decides versus having a separate delegation clause? Well, I suppose if there wasn't the AAA incorporation, there might be, although the breadth of the language here, I believe, gets you there. But we also have the incorporation of the AAA rules, and Rule 7 of the AAA rules expressly gives the arbitrator... It's a delegation clause, and if we cut and pasted that sentence and put it in there, there'd be no argument at all. But incorporating the AAA rules gets us there, and at least six circuits hold that, and I think district courts in every state in this circuit hold that. By incorporating the AAA rules, then you're saying they had to specifically challenge the delegation clause, and that's what they failed to do. That's right, and that's what reticenter says you have to do. You have to go after the delegation clause, which they didn't do. So whether they're right or wrong about the arbitration agreement itself is for... That's been delegated to the arbitrators, and look, Milan hasn't addressed that anywhere. It just wasn't on the radar, but that's how we get there, and I've got 45 seconds. I'd say one more thing about the contract, Your Honor. It was an arm's-length transaction. Milan's not a dinky little homespun corporation. That's not an issue before us. No, but I just wanted to correct that. I don't really appreciate things being thrown up at the last minute that are not even before us. I think that's inappropriate. Well, I apologize then, Your Honor. That wasn't meant to be. You didn't raise the issue. Your opponent did. All of a sudden, he said, this is unconscionable. Well, let's see. Is that an issue in the case? No. Okay. It wasn't raised? No. So we will... I, for one, won't consider that. I'll cede the rest of my time. Thank you, Your Honor. Sure. All right. Thank you both. Fascinating procedural claim here, of course, and we will give it due consideration, and the case will be submitted. Please call the next case.